Ryan Adair Shannon (D.D.C. Bar No. OR0007)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6407
rshannon@biologicaldiversity.org
*Pro Hac Vice*

Jeremiah Scanlan (D. Mass. Bar No. 715693)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6400
jscanlan@biologicaldiversity.org
*Pro Hac Vice*

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| Center for Biological Diversity,<br><br>Plaintiff,<br><br>v.<br><br>United States Environmental Protection Agency,<br><br>Defendant. | Civil Action No.:<br>4:25-at-99906_____<br><br><br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## INTRODUCTION

1.  On March 28, 2025, Plaintiff Center for Biological Diversity ("Center") submitted a specific and narrow request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *as amended*, to Defendant U.S. Environmental Protection Agency ("EPA"), seeking all requests for Presidential Exemptions from the Clean Air Act, 42 U.S.C. 7412(i)(4), that have been submitted to EPA since January 20, 2025. In violation of FOIA, EPA has failed to search for and disclose responsive records to the Center according to FOIA's disclosure mandate and timeframes. Instead, without lawful basis, and nearly two months after the request was

1    submitted, EPA has told the Center that it needs at least until October 31, 2025—almost
2    seven months from when the Center submitted its specific and narrow FOIA request—to
3    provide a response to the Center's request.
4          2.     The Center's FOIA request concerns Section 112 of the Clean Air Act,
5    which sets standards for the regulation of hazardous air pollutants that pose a serious
6    health risk, including cancer, reproductive effects, and other significant health or
7    environmental harms. *See* 42 U.S.C. § 7412(g)(2)(A). Section 112 also permits the
8    President, under narrow circumstances, to temporarily exempt polluters from compliance
9    with those standards. *Id*. § 7412(i)(4).
10         3.     Seeking to take advantage of what is intended to be a narrow exemption to
11   the Clean Air Act, EPA under the new Trump administration created a webpage on March
12   24, 2025, announcing that it had invited "the regulated community" to submit requests
13   for Presidential Exemptions to any of nine air pollution rules. *Web Archive Snapshot:*
14   *Clean Air Act Section 112 Presidential Exemption Information*, EPA (recorded Mar. 27,
15   2025), https://web.archive.org/web/20250327150027/https://www.epa.gov/stationary-
16   sources-air-pollution/clean-air-act-section-112-presidential-exemption-information. In
17   doing so, the EPA effectively volunteered to waive these essential protections that protect
18   the public and the environment from hazardous air pollution.
19         4.     The Center's March 28, 2025, FOIA request seeks all requests for
20   Presidential Exemptions submitted to EPA since January 20, 2025. But after FOIA's
21   mandatory deadlines for providing a determination had already elapsed, EPA requested
22   an extension of nearly six months to "provide a response." Without citing any FOIA
23   provision that allows it to do so, EPA essentially stated that it would wait for the White
24   House to make decisions on requests for Presidential Exemptions, and would only
25   provide "updates" when available even though the Center's FOIA request sought the
26   requests themselves and not the ultimate decisions on those requests. The Center
27   administratively appealed EPA's constructive denial of its request, stating that EPA had
28   violated FOIA by failing to conduct an adequate search for the requested records, failing

to provide a statutorily mandated determination within the deadline required by FOIA, and failing to promptly provide all records responsive to the Center's request. But although EPA "granted" and "remanded" the Center's appeal, it only did so on narrow grounds and ignored the fundamental FOIA violations raised by the Center.

5. Accordingly, the Center seeks (1) declaratory relief establishing that EPA violated FOIA, and (2) injunctive relief ordering EPA to immediately conduct an adequate search for the requested records, make an immediate determination on the Center's FOIA requests, and promptly release all requested records and information, including all reasonably segregable portions of any lawfully exempt records, by a date certain.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 because this action arises under FOIA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

7. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B), because the Center has its principal place of business in this judicial district.

8. Assignment of this case to the Tucson Division of this Court is appropriate because the Center has its principal place of business in Pima County. LRCiv 77.1(a), (c).

9. Declaratory relief is appropriate under 28 U.S.C. § 2201.

10. Injunctive relief is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202.

**PARTIES**

11. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization with offices throughout the United States and its headquarters in Tucson, Arizona. The Center has over 93,000 members.

12. The Center works through science, law, and policy to maintain and increase protections for air and water; plants, animals, and their native habitats; a livable climate; public lands; and healthy communities.

13. The Center's Climate Law Institute, which submitted the FOIA request at issue, specifically focuses on uniting the Center's programs in coordinated and ambitious strategies to protect wildlife, ecosystems, and communities from the catastrophic dangers and damages of climate disruption and the impacts of hazardous air pollution.

14. The Center's Environmental Health Program works to protect biodiversity and human health from toxic substances while promoting a deep understanding of the inextricable connection between the health of humans and all other species.

15. The Center is harmed by EPA's failure to comply with FOIA. EPA's refusal to process the Center's FOIA request as required by FOIA harms the Center because it deprives the Center from obtaining information about which entities have applied for "Presidential Exemptions" to Clean Air Act regulations that are in place to protect ecosystems and human health from hazardous air pollutants. The Center's request seeks all complete applications for exemptions that have been submitted to EPA since January 20, 2025.

16. Having this information would inform the Center—and allow the Center to inform its members and the public—about areas around the United States that are likely to experience hazardous air pollution that would otherwise be regulated under the Clean Air Act.

17. EPA's failure to comply with FOIA also harms the Center's ability to provide full, accurate, and current information to the public and its members on a matter of public interest. Absent this information, the Center cannot fully advance its mission to protect air and water, wildlife and nature, public lands, the climate, and vulnerable communities.

18. The Center's activities and its interests in the information are adversely affected by EPA's failure to disclose all requested records. This injury will be redressed if the Court orders EPA to disclose all requested records.

19. Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is a federal agency tasked with protecting human health and the environment.

EPA administers the Clean Air Act, including Section 112. *See* 42 U.S.C. § 7601(a). EPA is a federal governmental agency within the meaning of FOIA and is in possession and control of records responsive to the Center's FOIA request and, as such, it is subject to FOIA pursuant to 5 U.S.C. § 552(f) and is responsible for fulfilling the Center's FOIA request.

## STATUTORY BACKGROUND

### The Clean Air Act

20. Section 112 of the Clean Air Act addresses the regulation of hazardous air pollutants that pose a serious health risk, including cancer, reproductive effects, and other significant health or environmental harms. Section 112 sets emissions standards for major sources of hazardous air pollutants based on the "maximum achievable control technology." 42 U.S.C. § 7412(g)(2)(A). The purpose of these standards is to substantially reduce the emission of hazardous air pollutants from major sources by requiring the use of emission control technologies based on the best-performing sources in a regulated industry.

21. Clean Air Act Section 112(i)(4) permits the President to temporarily exempt polluters from compliance with emissions standards for hazardous air pollutants "if the President determines that the technology to implement such standard is not available and that it is in the national security interests of the United States to do so." *Id.* § 7412(i)(4). Congress intended for strict oversight of such exemptions and the Clean Air Act requires the President to report to Congress any such exemption (or extension thereof). *Id.*

### The Freedom of Information Act

22. FOIA's primary purpose is to improve government transparency and accountability by requiring the disclosure of agency records and information. It establishes the public's right to access all federal agency records, 5 U.S.C. § 552(a), unless one or more narrow statutory exemptions apply, *id.* § 552(b)(1)-(9).

23. Recognizing that the timely disclosure of requested records is essential to fulfilling its purpose, FOIA includes a disclosure mandate which requires federal

agencies to promptly disclose all agency records that are requested in accordance with FOIA. *Id*. § 552(a)(3)(A), (a)(6)(C)(i).

24. Within 20 working days of receiving a request, an agency must: (1) "determine" if it will release the requested records; and (2) notify the requester of (a) its determination and reasons for it, (b) the right to seek assistance from the FOIA Public Liaison, and (c) the right to appeal an adverse determination. *Id*. § 552(a)(6)(A)(i).

25. To make the statutorily required determination, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the determination is adverse.

26. In "unusual circumstances," an agency may extend the time to make a determination by *no more than* 10 additional working days, but it must provide written notice to the requester setting forth the unusual circumstances for the extension and "the date on which a determination is expected to be dispatched." *Id*. § 552(a)(6)(B)(i); 40 C.F.R. § 2.104(f)(1).

27. If the agency provides written notice that the request cannot be processed within the specified time limit, the agency shall provide "an opportunity to limit the scope of the request so that it may be processed within" the statutory time limit or "an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request" and shall "make available its FOIA Public Liaison" to "assist in the resolution of any disputes between the requester and the agency." 5 U.S.C. § 552(a)(6)(B)(ii).

28. FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. *Id*. § 552(a)(3)(C)–(D).

29. In certain limited instances, records may be withheld pursuant to nine specific exemptions. *Id*. § 552(b)(1)-(9). These exemptions must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy.

30. An agency bears the burden of proof if it claims any exemption applies to withhold responsive documents. *Id*. § 552(a)(4)(B).

31. Even where records may be exempt from disclosure, FOIA requires agencies to disclose reasonably segregable portions of those records. *Id*. § 552(b).

32. FOIA does not provide agencies with an option to thwart FOIA's disclosure mandate and violate its determination deadlines by pointing to an ongoing decisionmaking process. Nor does FOIA contain any provision that would allow an agency to substitute a "response" for the required final determination. Even where in some circumstances an agency may lawfully extend FOIA's determination deadlines, *see id*. § 552(a)(6)(B)(i), it may nevertheless still disclose responsive records to the requester in the interim as such records become available.

33. Upon request, FOIA requires agencies to provide an estimated date of completion to FOIA requesters which informs them of an estimated date when the agency will complete action on their request. *Id*. § 552(a)(7)(B).

34. Where an agency fails to make a timely determination and fails to respond properly to a FOIA request, a requester may administratively appeal the agency's "constructive denial" of its request, and if the agency fails to respond to an appeal within 20 working days, the requester is deemed to have exhausted their administrative remedies and may seek judicial review. *Id*. § 552(a)(6)(C)(i).

35. FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*. § 552(a)(4)(B).

## STATEMENT OF FACTS

### EPA's Invitation to Request Exemptions from Air Pollution Rules

36. On March 24, 2025, EPA created a webpage announcing that since March 12, 2025, it had invited "the regulated community" to submit requests for Presidential Exemptions to any of nine air pollution rules. *Web Archive Snapshot: Clean Air Act Section 112 Presidential Exemption Information*, EPA (recorded Mar. 27, 2025), https://web.archive.org/web/20250327150027/https://www.epa.gov/stationary-sources-air-pollution/clean-air-act-section-112-presidential-exemption-information. The webpage directed requests for exemptions to the email address "airaction@epa.gov" with a deadline of March 31, 2025. *Id*.

37. The President purports to have already exempted at least 66 facilities from complying with EPA's Mercury and Air Toxics Standards rule promulgated in 2024, according to an April 8, 2025, press release. *See* Presidential Proclamation, Donald J. Trump, Regulatory Relief for Certain Stationary Sources to Promote American Energy (Apr. 8, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/rregulatory-relief-for-certain-stationary-sources-to-promote-american-energy; EPA, Annex 1 (Apr. 2025) https://www.epa.gov/system/files/documents/2025-04/regulatory-relief-for-certain-stationary-annex-1.pdf (listing the exempted sources).

### The Center's FOIA Request

38. On March 28, 2025, the Center submitted to EPA a FOIA request for records, dated from January 20, 2025, to the date that EPA conducts the relevant search, seeking:

> The records of requests for a Presidential Exemption under the Clean Air Act Section 112(i)(4) that are submitted to airaction@epa.gov or submitted to the EPA by any other means or methods as set forth on the EPA website: https://www.epa.gov/stationary-sources-air-pollution/clean-air-act-section-112-presidential-exemption-information.

39. The same day, March 28, 2025, EPA acknowledged that it had received the Center's request and assigned the request the tracking number 2025-EPA-04839.

Page 8

1    40.    On April 1, 2025, EPA notified the Center that its request "was assigned for
2    processing."
3    41.    On April 28, 2025, the Center requested an update from EPA on its request
4    and an estimated date of completion for a determination, as required by 5 U.S.C. §
5    552(a)(7)(B)(ii).
6    42.    On April 29, 2025, EPA notified the Center that "[g]iven the scope of the
7    request" it was invoking the extension of 10 additional working days for "unusual
8    circumstances" under FOIA.
9    43.    On May 13, 2025—more than 30 working days since the Center submitted
10   its FOIA request—a member of EPA's FOIA staff sent an email to the Center "requesting
11   an extension until October 31, 2025, to provide a response to [the Center's] FOIA request
12   as the decision-making process is currently ongoing." EPA stated that "[t]he White House
13   continues to process the requests for exemptions, and we are awaiting their decisions."
14   The email stated that EPA will only "provide any updates as they become available."
15   Thus, EPA did not commit to produce responsive records to the Center as such records
16   become available.
17   44.    On May 14, 2025, the Center appealed EPA's constructive denial of the
18   Center's FOIA request. The Center's appeal stated that EPA had failed to conduct an
19   adequate search for all responsive records, had failed to provide a timely determination
20   within FOIA's mandated deadlines, and had failed to promptly produce all responsive
21   records. The Center did not agree to EPA's request for an extension until October 31,
22   2025, and stated that EPA must immediately conduct an adequate search for responsive
23   records, provide a determination on the Center's request, and produce all responsive
24   records.
25   45.    On May 21, 2025, EPA acknowledged receipt of the Center's appeal.
26   46.    On June 10, 2025, EPA released a single record in response to the Center's
27   FOIA request. The lone record was a 10-page application submitted by two industry
28   organizations to EPA for Presidential Exemptions for stationary sources under only one

out of the nine rules mentioned by EPA in its original announcement. That application was already obtained by news outlets and has been publicly available since April 2025. *See Web Archive Snapshot: Petrochemical Lobbyists Email Trump EPA Administrator Zeldin*, Environmental Defense Fund (recorded June 24, 2025), https://web.archive.org/web/20250624144225/https://www.edf.org/media/petrochemical-lobbyists-email-trump-epa-administrator-zeldin-ask-exempt-all-sources-limits.

47. On June 11, 2025, EPA sent a letter to the Center "granting" the Center's appeal. EPA's letter stated the appeal was granted because EPA's "request for extension was not sufficient" because it "did not provide the Center an opportunity to modify the request, or to arrange for an alternative time frame for completion of processing" and it "did not provide contact information for the FOIA Public Liaison nor did it notify the Center of the right to receive dispute resolution services." EPA remanded the FOIA request internally to fix those deficiencies within 10 working days.

48. But EPA's appeal determination was silent on the central issues in the Center's appeal: that EPA had failed to conduct an adequate search for responsive records, failed to provide a determination within FOIA's mandated deadlines, and failed to produce all records responsive to the Center's request.

49. On June 18, 2025, EPA sent the Center a revised request for an extension on the Center's FOIA request. The June 18 request only revised the remanded issues. It did not state that EPA would process the Center's FOIA request without waiting for any White House "decision-making process" to play out.

50. EPA has not proceeded to process the Center's FOIA request, nor has it provided any statutory basis for doing so.

51. As of the date of this filing, more than 20 working days have passed since EPA received the Center's March 28, 2025, request, tracking number 2025-EPA-04839. The extension of 10 working days claimed by EPA has also passed as of the date of this filing.

52. As of the date of this filing, EPA has not provided a determination to the Center that describes the scope of the records EPA intends to produce or withhold, explains the reasons for withholding any records, or informs the Center that it may appeal any specific adverse determination within the relevant time periods in 5 U.S.C. § 552(a)(6)(A)(i) or § 552(a)(6)(B).

53. As of the date of this filing, EPA has not provided any other requested records to the Center.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**EPA Has Failed to Conduct an Adequate Search for Responsive Records**

54. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

55. The Center properly requested records within the control of EPA through its March 28, 2025, request, tracking number 2025-EPA-04839.

56. The Center has a statutory right to have EPA process its March 28, 2025, FOIA request in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

57. EPA violated the Center's rights in this regard because EPA has unlawfully failed to conduct an adequate search reasonably calculated to locate all records responsive to the Center's FOIA request. *Id*.

58. EPA has no lawful basis under FOIA for its failure to conduct an adequate search for records responsive to the Center's March 28, 2025, records request.

59. The Center is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

60. The Center's organizational activities will be adversely affected if EPA is allowed to continue violating FOIA's requirements to conduct an adequate search for records responsive to the Center's March 28, 2025, records request.

61. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in records requests to EPA in the foreseeable future.

62. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, EPA will continue to violate the Center's rights under FOIA to an adequate search for records responsive to the Center's March 28, 2025, records request.

## SECOND CLAIM FOR RELIEF

**EPA Has Failed to Comply with FOIA's Mandatory Determination Deadline**

63. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

64. The Center has a statutory right to a lawful final determination from EPA on the Center's March 28, 2025, FOIA request in a manner that complies with FOIA. 5 U.S.C. § 552(a)(6)(A)(i).

65. In order to make a lawful determination, EPA must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the determination is adverse.

66. The deadline for EPA to provide a determination on the Center's request has lapsed because more than 20 working days have passed since EPA received the Center's request and the extension of 10 working days claimed by EPA has also passed.

67. EPA's failure to provide a lawful determination on the Center's request by FOIA's mandatory deadlines violates the Center's right to a determination.

68. EPA has no lawful basis under FOIA for its delay and has provided no lawful basis to withhold a determination in response to the Center's March 28, 2025 FOIA request.

69. The Center is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

70. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in records requests to EPA in the foreseeable future.

71. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, EPA will continue to violate the Center's right to receive a determination in response to the Center's request for records under FOIA.

### THIRD CLAIM FOR RELIEF

**EPA Has Failed to Promptly Disclose all Responsive Records**

72. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

73. The Center has a statutory right to the prompt disclosure of requested records. 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i).

74. EPA has violated the Center's rights in this regard by withholding records that are responsive to the Center's March 28, 2025, FOIA request.

75. EPA has provided no lawful basis to withhold records responsive to the Center's March 28, 2025 FOIA request pursuant to any of FOIA's nine exemptions to mandatory disclosure or to withhold any segregable, nonexempt portion of the records. *See id*. § 552(a)(8)(A), (b)(1)–(9).

76. EPA has no lawful basis under FOIA for its delay and has provided no lawful basis to withhold responsive records in response to the Center's March 28, 2025 FOIA request.

77. The Center is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

78. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in records requests to EPA in the foreseeable future.

1  79. Unless enjoined and made subject to a declaration of the Center's legal
2  rights by this Court, EPA will continue to violate the Center's right to promptly receive
3  all records responsive to its FOIA request.

**PRAYER FOR RELIEF**

WHEREFORE, the Center requests that this Court:

A. Declare that the Defendant violated FOIA by failing to conduct an adequate search for records responsive to the Center's March 28, 2025, FOIA request, tracking number 2025-EPA-04839, failing to provide a lawful determination within 30 working days on the Center's request, and failing to promptly disclose all records responsive to the request;

B. Order the Defendant to search for any and all responsive records to the Center's March 28, 2025, FOIA request, tracking number 2025-EPA-04839, using search methods reasonably likely to lead to discovery of all responsive records with the cut-off date for such search being the date the search is conducted;

C. Order the Defendant to immediately make a determination on the Center's March 28, 2025, FOIA request, tracking number 2025-EPA-04839;

D. Order the Defendant to promptly produce, by a date certain, all nonexempt responsive records or segregable portions of the records and a *Vaughn* index of any responsive records or portions of responsive records withheld under a claim of exemption, at no cost to Plaintiff;

E. Enjoin the Defendant from continuing to withhold any nonexempt responsive records or segregable portions of the records;

F. Retain jurisdiction of this action to ensure the processing of the Center's FOIA request and that no agency records or portions of the records are improperly withheld;

G. Award the Center its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

H. Grant such other and further relief as the Court may deem just and proper.

DATED: June 25, 2025

Respectfully submitted,

*/s/ Ryan Adair Shannon*
Ryan Adair Shannon
(D.D.C. Bar No. OR0007)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6407
rshannon@biologicaldiversity.org
*Pro Hac Vice*

*/s/ Jeremiah Scanlan*
Jeremiah Scanlan
(D. Mass. Bar No. 715693)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6400
jscanlan@biologicaldiversity.org
*Pro Hac Vice*

*Attorneys for Plaintiff*